## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| NANCY FETHER, | : | |
| as Personal Representative for the | : | |
| Estate of Justin Michael Lihvarchik, | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | Civil No. CCB 12-1674 |
| | : | |
| | : | |
| FREDERICK COUNTY, MARYLAND, et al. | : | |
| | : | |
| *Defendants*. | : | |
| | : | |

## <u>MEMORANDUM</u>

Plaintiff Nancy Fether, as personal representative of the estate of Justin Michael

Lihvarchik (the "Estate" or "plaintiff"), brought this action against the following defendants:

Frederick County, Maryland (the "County"); Sheriff Charles Jenkins; Frederick County

Detention Center officers Jessie Burris, Ryan Harris, Orlando Rosa, and Gilbert Sackett; and

"John and Jane Does 1-10" (collectively, the "defendants").  In its first amended complaint, the

Estate seeks a declaratory judgment that the instant lawsuit is not barred by res judicata, as well

as relief for survival claims under 42 U.S.C. § 1983 and the Maryland Declaration of rights, and

relief for two state common law tort claims.  Now pending before the court is defendants' motion

to dismiss the first amended complaint.  (ECF No. 12.)  The issues have been fully briefed, and

the court finds no hearing is necessary.  *See* Local Rule 105.6.  For the reasons stated below,

defendants' motion to dismiss will be granted in part and denied in part.

## BACKGROUND

The following facts are alleged by the Estate in its first amended complaint and arise out of Justin Lihvarchik's arrest and subsequent suicide on June 10, 2009, while he was in custody at the Frederick County Detention Center (the "Detention Center").  (*See* ECF No. 12.)

## I.      Factual Background

On the evening of June 9, 2009, Mr. Lihvarchik became intoxicated while attending a gathering at a friend's home.  (Am. Compl. ¶¶ 43-44.)  After the gathering, Mr. Lihvarchik returned to his basement apartment in Sabillasville, Maryland, where he continued to drink alcohol with his girlfriend and his landlord.  (*Id.* ¶ 45.)  Mr. Lihvarchik's landlord observed that Mr. Lihvarchik "was very intoxicated and may have been under the influence of drugs."  (*Id.* ¶ 46.)  Mr. Lihvarchik subsequently began threatening suicide, holding a steak knife and a pizza cutter to his throat.  (*Id.* ¶¶ 49-50.)  This caused "visibly apparent redness, bleeding, and scarring" on his neck.  (*Id.* ¶ 51.)  Mr. Lihvarchik's girlfriend and his landlord got the steak knife and pizza cutter away from him and retreated to a small bathroom in the house.  (*Id.* ¶ 52.)  Mr. Lihvarchik then entered the bathroom and knocked his girlfriend and his landlord into the bathtub.  (*Id.* ¶ 53.)  He subsequently left the house, entered his vehicle, and rammed it repeatedly into a dirt embankment in the driveway.  (*Id.* ¶¶ 53-54.)  Mr. Lihvarchik attempted to reenter the residence, but his girlfriend and his landlord locked the doors and called the police. (*Id.* ¶¶ 55-56.)  During the 911 call, Mr. Lihvarchik's landlord informed the police dispatcher of Mr. Lihvarchik's erratic behavior and attempts to harm himself.  (*Id.* ¶¶ 56-59.)

According to the first amended complaint, the Frederick County Sheriff's Deputies who responded to the scene were informed of Mr. Lihvarchik's behavior and his attempts to harm himself.  (*Id.* ¶¶ 60-63.)  At about 2:30 a.m. on the morning of June 10, 2009, Mr. Lihvarchik

was taken by Sheriff's Deputies to the Detention Center "where he was booked and placed alone and unsupervised in a cell." (*Id.* ¶ 64.) No psychiatric or medical treatment was provided to Mr. Lihvarchik. (*Id.* ¶¶ 65-66.) Defendants Burris and Rosa "conducted a pro-forma medical screening/assessment" of Mr. Lihvarchik, "but disregarded his mental health and the cut [he] had made to his own neck." (*Id.* ¶ 67.)

Between approximately 2:30 a.m. and 5:37 a.m. on June 10, 2009, Mr. Lihvarchik was left alone in his holding cell with no one checking on his status. (*Id.* ¶ 68.) The first amended complaint alleges that Detention Center officers, including defendants Harris and Sackett, were required by Detention Center policy to check on Mr. Lihvarchik at least every twenty minutes. (*Id.* ¶ 69.) These officers, however, allegedly falsified logs showing that they had checked on Mr. Lihvarchik every twenty minutes. (*Id.* ¶ 70.) Instead of checking on inmates and detainees, including Mr. Lihvarchik, the first amended complaint alleges that defendants Harris and Sackett were using a computer in their office to participate in a fantasy baseball league. (*Id.* ¶ 71.) "At or about 5:37 a.m., a correctional officer conducting the feeding process for the Holding Unit inmates found [Mr. Lihvarchik] dead in his cell, where he had hanged himself with his shoelaces from the top bunk" in his holding cell. (*Id.* ¶ 73.) Mr. Lihvarchik was survived by his parents— Nancy Fether and Francis Lihvarchik—as well as his minor child, "C.L." (*See id.* ¶¶ 37, 85.)

## II.    Procedural Background

After his death, Mr. Lihvarchik's parents "contacted Frederick County attorney Richard Bricken … regarding the possibility of pursuing appropriate civil claims." (Am. Compl. ¶ 85.) In August 2009, Mr. Bricken sent notices of claims to: John Mathias, Office of County Attorney; Commissioner Jan H. Gardner, Office of County Commissioner; Frederick County Sheriff Charles A. Jenkins; and Nancy K. Kopp, State Treasurer of Maryland. (*Id.* ¶ 86.) The August

2009 notices of claims were sent on behalf of Francis Lihvarchik, individually and on behalf of his grandson, C.L., and Nancy Fether, individually and on behalf of her grandson, C.L. (Def.'s Mem. Mot. Dismiss, Ex. A.)

By November 2009, Ms. Fether had gained full legal custody of C.L., and Mr. Bricken therefore sent new notices of claims on behalf of Ms. Fether "in her capacity as guardian of C.L." (Am. Compl. ¶ 87.)  In response to the notices of claims, "Frederick County's insurer offered $50,000 in settlement of the wrongful death claims that [Mr.] Lihvarchik's relatives might bring." (*Id.* ¶ 88.)  On November 17, 2009, both of Mr. Lihvarchik's parents signed "renunciations" of their right to bring a wrongful death claim, choosing instead to assign their rights to Mr. Lihvarchik's minor child, C.L. (*Id.* ¶ 89, Ex. C.)  Subsequently, on February 19, 2010, Ms. Fether signed a "Custodian and Guardian's Release and Indemnity Agreement" in her capacity "as sole and Legal Custodian of [C.L.], a minor." (*Id.* ¶ 90, Ex. D.)  Because C.L. was a minor, Ms. Fether filed a "friendly suit" complaint on February 24, 2010 in the Circuit Court for Frederick County, seeking approval of the settlement reached with Frederick County on C.L.'s behalf. (*See* Def.'s Mem. Mot. Dismiss, Ex. B.)  On March 25, 2010, the circuit court entered an order approving the settlement. (*Id.*, Ex. C.)  The parties subsequently entered into a stipulation of dismissal with prejudice. (*Id.*, Ex. D.)

On February 12, 2012, Ms. Fether filed a petition in Frederick County to be appointed as the personal representative of Mr. Lihvarchik's estate. (Am. Compl. ¶ 15.)  Ms. Fether's petition was granted on March 7, 2012, by the Register of Wills for Frederick County. (*Id.*, Ex. D.)  As the Estate's personal representative, Ms. Fether brought this action seeking a declaratory judgment that the instant lawsuit is not barred by *res judicata*, as well as relief for survival

claims under 42 U.S.C. § 1983 and the Maryland Declaration of rights, and relief for two state common law tort claims.

**ANALYSIS**

### I.   Legal Standard

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff."  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints."  *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted).  Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions."  *Id.* (internal quotation marks and alterations omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*,

556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

## II.    Res Judicata

Defendants have moved to dismiss the Estate's first amended complaint in its entirety,

arguing that the dismissal with prejudice of the February 24, 2010 "friendly suit" bars the instant

lawsuit on *res judicata* grounds.  This court must apply Maryland law in deciding the preclusive

effect of the dismissal of the "friendly suit."  *See Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d

156, 162 (4th Cir. 2008) ("Generally, the preclusive effect of a judgment rendered in state court

is determined by the law of the state in which the judgment was rendered.").  As explained

below, the requirements for *res judicata* under Maryland law have not been established here.

"It is well established that the doctrine of *res judicata* bars the relitigation of matters

previously litigated between parties and their privies, as well as those claims that *could have*

*been asserted* and litigated in the original suit."  *Anyanwutaku v. Fleet Mortg. Grp., Inc.*, 85 F.

Supp. 2d 566, 570 (D. Md. 2000) (emphasis in original) (collecting cases).  To successfully

assert a *res judicata* defense, a party must demonstrate each of the following three elements: "(1)

the parties in the present litigation are the same or in privity with the parties to the earlier

litigation; (2) the claim presented in the current action is identical to that determined or that

which could have been raised and determined in the prior litigation; and (3) there was a final

judgment on the merits in the earlier suit."  *Hall v. St. Mary's Seminary & Univ.*, 608 F. Supp. 2d

679, 684 (D. Md. 2009) (citing *Colandrea v. Wilde Lake Cmty. Ass'n*, 761 A.2d 899, 908 (Md.

2000)).

This court is satisfied that the second and third elements of *res judicata* have been met

here.  With respect to the second element—that the claims in the present case could have been

raised and determined in the prior litigation—Maryland has adopted the "transaction test." *See Anyanwutaku*, 85 F. Supp. 2d at 571. For two claims to arise out of the same transaction, there must be a "natural grouping or common nucleus of operative facts." *Pittston Co. v. U.S.*, 199 F.3d 694, 704 (4th Cir. 1999) (quotations omitted). "Two suits that rely upon the same facts will share an identity of claims even if the suits are based upon different legal theories." *Hall*, 608 F. Supp. 2d at 686. Indeed, two lawsuits arise out of the same transaction when the facts "are sufficiently related in time, space, origin and motivation; would have formed a convenient trial unit; and their treatments as a unit would conform to the parties' expectations or business understandings or usage." *Id.* (quoting *White v. Harris*, 23 F. Supp. 2d 611, 616 (D. Md. 1998)). Here, the wrongful death claim in the "friendly suit" and all of the claims asserted in the present litigation are based on Mr. Lihvarchik's arrest and subsequent suicide on June 10, 2009, while he was in custody at the Detention Center. The facts supporting both the "friendly suit" and the present litigation are identical. Accordingly, the second element of Maryland's *res judicata* test has been established.

The next element of *res judicata*—that a final judgment on the merits has been issued in the earlier case—has also been met. Under Maryland law, "a dismissal 'with prejudice' qualifies as an adjudication 'on the merits' and thus satisfies the requirements of *res judicata*." *Church v. Maryland*, 180 F. Supp. 2d 708, 748 (D. Md. 2002) (citations omitted). Here, the parties to the "friendly suit" entered into a stipulation of dismissal with prejudice. This constituted a final judgment on the merits for *res judicata* purposes. Accordingly, the third element of Maryland's *res judicata* test has been established.

The court does not agree, however, with defendants' assertion that the parties in the present litigation are the same or in privity with the parties in the earlier litigation. *See Hall*, 608

F. Supp. 2d at 684-85.  As an initial matter, the plaintiff in the "friendly suit" is undisputedly not the same as the plaintiff as in the present suit.  In the "friendly suit," the plaintiff was C.L., Mr. Lihvarchik's minor child.  Here, the plaintiff is the Estate.  Although Ms. Fether filed both lawsuits—the "friendly suit" as sole legal custodian of C.L. and the present case as personal representative of the Estate—Ms. Fether was not the plaintiff in either litigation.[1]  Therefore, the parties in the present litigation are not the same as the parties in the earlier litigation.

In light of this conclusion, defendants can only establish *res judicata* by demonstrating privity, which they have failed to do.  The term "privity" means "a person so identified in interest with another that he represents the same legal right."  *FWB Bank v. Richman*, 731 A.2d 916, 930 (Md. 1999) (citations omitted).  C.L. and the Estate are not in privity because they each have different legal rights and are each entitled to separate and distinct legal remedies.  The "friendly suit" was a wrongful death action "designed to compensate the family of a decedent who died."  *Georgia-Pacific v. Benjamin*, 904 A.2d 511, 523 (Md. 2006); *see also* Md. Code. Cts. & Jud. Proc. § 3-904 ("[A]n action under this subtitle shall be for the benefit of the wife, husband, parent, and child of the deceased person.").  The present litigation, however, is a survival action, which can be brought only on behalf of a decedent after his or her death.  *See Benjamin v. Union Carbide Corp.*, 873 A.2d 463, 480 (Md. App. 2005) (noting that "a survival action is the decedent's cause of action brought on his behalf after his death.  In other words, in a survival action, the decedent is the claimant, and the personal representative merely his agent"); *see also Globe Am. Cas. Co. v. Chung*, 547 A.2d 654, 658 (Md. App. 1988), *vacated on other grounds*, 589 A.2d 956 (Md. 1991) (distinguishing Maryland's wrongful death statute from its

---

[1] On November 17, 2009, Ms. Fether relinquished her right to be a plaintiff in any wrongful death claim arising out of Mr. Lihvarchik's death, choosing instead to assign her rights to Mr. Lihvarchik's minor child, C.L.  (Am. Compl. ¶ 89, Ex. C.)

survival statute and noting that the "suits are by different persons, the damages go into different channels, and are recovered upon different grounds, and the causes of action though growing out of the same wrongful act or neglect, are entirely distinct") (quoting *Stewart v. United Electric Light & Power Co.*, 65 A. 49, 52 (Md. 1906)).  The Estate, as the plaintiff in the present survival action, is entitled to legal remedies distinct from those available to C.L in the "friendly suit." Indeed, C.L. could not have maintained a survival action in the earlier "friendly suit."  Because neither party is entitled to seek relief for the other party's claims, the parties are not "so identified in interest" to be in privity with each other.

Although it is judicially inefficient to bring two actions arising out of Mr. Lihvarchik's death, Ms. Fether—as the future personal representative of the Estate—was not required to file the Estate's present claims in the earlier "friendly suit."  At the time of the "friendly suit," Mr. Lihvarchik's estate had not yet been established nor are there any allegations that Ms. Fether had been identified as the future personal representative for Mr. Lihvarchik's estate.  Accordingly, the requirements for *res judicata* under Maryland law have not been established here, and this action will not be dismissed on those grounds.

## III.   Other Bases for Dismissal

### A.  Claims for Deprivation of Civil Rights Under Federal and State Law[2]

Section 1983 establishes liability for "every person" who, under the color of law, deprives an individual of any rights, privileges, or immunities secured by the Constitution.  42

---

[2] Article 24 of the Maryland Declaration of Rights (Maryland's due process provision) and the Fourteenth Amendment have been construed identically except where the Maryland Court of Appeals has expressly stated that Article 24 is broader.  *See Ross v. Cecil Cnty. Dep't of Soc. Serv.*, 878 F. Supp. 2d 606, 622 (D. Md. 2012) (citing *Koshko v. Haining*, 921 A.2d 171, 194 n.22 (Md. 2007)).  There is no indication that Article 24 affords more protection than the Fourteenth Amendment on the claims presented in this suit.  Therefore, to the extent that the complaint states a claim under Section 1983, it also states a claim under Article 24.

U.S.C. § 1983.  In addition, a plaintiff may bring a common law cause of action under Article 24 of the Maryland Declaration of Rights.  *See Widgeon v. Eastern Shore Hosp. Ctr.*, 479 A.2d 921, 930 (Md. 1984).  In their motion to dismiss, defendants assert various bases for dismissing the Estate's claims under Section 1983 and Article 24.  The arguments are addressed below.

### a.  *Individual Capacity Claims*

The Estate claims civil rights violations under Section 1983 (Counts II, III, and IV) and under Article 24 (Count VI) against defendants Sheriff Jenkins, Burris, Harris, Rosa, and Sackett in their individual capacities.  For an individual to be liable under Section 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights."  *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (citations omitted). Defendants argue that Sheriff Jenkins is entitled to dismissal in his individual capacity because the first amended complaint does not allege that he was present at the Detention Center or personally involved when Mr. Lihvarchik committed suicide.  The Estate has noted that it no longer intends to pursue Sheriff Jenkins in his individual capacity in Counts II, III, and IV.  (Pl.'s Opp'n 2-3, n.3.)  Accordingly, the claims asserted in Counts II, III, IV, and VI against Sheriff Jenkins in his individual capacity will be dismissed without prejudice.

Defendants do not contend that defendants Burris, Harris, Rosa, or Sackett are entitled to dismissal from Counts II, III, or IV.  Therefore, the Section 1983 claims asserted in these Counts will proceed against defendants Burris, Harris, Rosa, and Sackett in their individual capacities.

### b.  *Official Capacity Claims: Sheriff Jenkins and Frederick County*

The Estate further alleges civil rights violations under Section 1983 (Count V) and under Article 24 (Count VI) against defendant Sheriff Jenkins in his official capacity and against Frederick County.  While a municipality is subject to suit under Section 1983, *see Monell v.*

*Dep't Soc. Serv.*, 436 U.S. 658, 690 (1978), liability attaches "only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original).  A municipality cannot be held liable for a Section 1983 action under the theory of *respondeat superior*. *Monell*, 436 U.S. at 694.  Instead, liability under a *Monell* claim "arises only where the constitutionally offensive acts of city employees are taken in furtherance of some municipal 'policy or custom.'" *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (citing *Monell*, 436 U.S. at 694).

As to Frederick County, defendants argue that dismissal is appropriate because Sheriff Jenkins—not Frederick County—is responsible for policymaking at the Detention Center.  As such, defendants contend that because Frederick County does not set or control Sheriff Jenkins's policies at the Detention Center, Frederick County cannot be liable for any civil rights violations that occur there.  As to Sheriff Jenkins, defendants argue that dismissal is appropriate because he is a state official and therefore is not subject to suit under Section 1983.  *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State nor is officials action in their official capacities are 'persons' under § 1983").

Although the Court of Appeals of Maryland has concluded that, under Maryland law, sheriffs are state rather than local government employees, *see Rucker v. Harford Cnty.*, 558 A.2d 399, 402 (Md. 1989), this does not end the inquiry for either Frederick County or Sheriff Jenkins. In *Dotson v. Chester*, 937 F.2d 920, 924 (4th Cir. 1991), the Fourth Circuit concluded that "County liability for the Sheriff's operation of the County Jail depends on whether the Sheriff had final policymaking authority for the County over the County."  The court explained that "liability relies more on final policymaking authority than on the technical characterization of an

official as a state or county employee." *Id.* (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). It is the individual's function—not his or her title—that matters.

Looking to the first amended complaint, the Estate has alleged that both Sheriff Jenkins and Frederick County have engaged in policies, customs, and/or practices that led to violations of Mr. Lihvarchik's civil rights, and that these "longstanding customs, policies, and practices constituted … standard operating procedure." (Am. Compl. ¶¶ 127-28.) Specifically, the first amended complaint alleges, among other things: "an ongoing pattern and practice of deliberate indifference and reckless disregard to the health needs and safety of Detention Center detainees;" "the policy, custom, or practice of placing detainees who are potential suicide threats in areas of the Detention Center that are not continuously visible to staff members;" and "the policy and practice of permitting detainees to retain instrumentalities, such as shoelaces, that are well-known and obvious facilitators of suicides and attempts." (*Id.* ¶ 129.) The first amended complaint further alleges that Sheriff Jenkins and Frederick County "expressly or tacitly encourage, ratified, and/or approved of the acts and/or omissions alleged herein, and knew that such conduct was unjustified and would result in violations of Constitutional rights. (*Id.* ¶ 130.)

Although it is a close question, it may be that notwithstanding Sheriff Jenkins's status as a state employee, his actions or inactions could represent Frederick County's policies or customs for which Frederick County will be legally responsible. However, the court need not resolve the issue at this time because the official capacity claims in Count V alleging civil rights violations under Section 1983 will be bifurcated and stayed until the other claims have been resolved.

### c. *Bifurcation*

In the alternative, defendants request that the court bifurcate the claims against Sheriff Jenkins and Frederick County in Count V from those against the Frederick County Detention

Center officers in their individual capacities.  For the reasons described in *Marryshow v. Town of Bladensburg*, 139 F.R.D. 318 (D. Md. 1991), the claims against Sheriff Jenkins and Frederick County in Count V based on their alleged custom or policy will be bifurcated and stayed until the other claims have been resolved.  As in *Marryshow*, proof of liability for Sheriff Jenkins and Frederick County based on a custom or policy first requires a showing that there was a civil rights violation by one of the Detention Center officers.  *See id.* at 319.  Moreover, as in *Marryshow*, proof of a custom or policy by Sheriff Jenkins and Frederick County will likely require the Estate to introduce evidence that would be irrelevant to the liability of the individual Detention Center officers.  *See id.* at 319-20.  Accordingly, to maximize efficiency and convenience, and minimize unfair prejudice and delay, the proceedings will be bifurcated and discovery on the claims that require proof of a custom or policy by Sheriff Jenkins and Frederick County will be stayed until the other claims have been resolved.

### B.  State Law Claims

Counts VI, VII, and VIII will be dismissed because the Estate did not provide notice to Frederick County of its claims pursuant to the Local Government Tort Claims Act (the "LGTCA").  The LGTCA requires a plaintiff seeking unliquidated damages from a local government or its employees to submit administrative notice of this claim within 180 days after the injury.  Md. Code, Cts. & Jud. Proc. Art. § 5-304(b).  "[N]otice shall be given in person or by certified mail…to the…corporate authorities of a defendant local government." *Id.* § 5-304(c)(1).  "The notice shall be in writing and shall state the time, place, and cause of the injury." *Id.* § 5-304(c)(3). The filing of this notice is a condition precedent to the plaintiff's underlying action for damages, and should be alleged as a substantive element in the complaint in order to state a claim under Maryland law.  *Curtis v. Pracht*, 202 F. Supp. 2d 406, 414 (D. Md. 2002) (citing

*Madore v. Balt. Cnty.*, 367 A.2d 54, 56 (Md. App. 1976)).  The notice requirements of the

LGTCA apply to intentional and constitutional torts.  *Curtis*, 202 F. Supp. 2d at 414 (citing

*Thomas v. City of Annapolis*, 688 A.2d 448, 456 (Md. App. 1997) and *Ashton v. Brown*, 660

A.2d 447, 465 n.19 (Md. 1995)).[3]

    In the present case, the Estate never provided defendant with any notice of a potential

survival claim or a claim under Article 24.  The only claim of which the defendants received

notice was the wrongful death claim asserted by C.L., Mr. Lihvarchik's minor child.  Indeed, the

August 2009 notices of claims were sent on behalf of Francis Lihvarchik, individually and on

behalf of his grandson, C.L., and Nancy Fether, individually and on behalf of her grandson, C.L.

(Def.'s Mem. Mot. Dismiss, Ex. A.)  Moreover, the November 2009 notices of claims were sent

on behalf of Ms. Fether "in her capacity as guardian of C.L."  (Am. Compl. ¶ 87.)  The Estate did

not provide the defendants with any notice of its survival or Article 24 claims.  Accordingly, the

Estate did not meet the notice requirements under the LGTCA.[4]

    Because the Estate has failed to comply with the LGTCA's notice requirements, its suit

against Frederick County and its employees can proceed only if the Estate "can show good cause

exists to waive such requirements" and if defendants "cannot affirmatively show that its defense

has been prejudiced by lack of required notice."  *Huggins v. Prince George's Cnty.*, 683 F.3d

525, 538 (4th Cir. 2012) (citing Md. Code, Cts & Jud. Proc. Art. § 5-304(d)).  The defendants'

burden to show prejudice does not arise until the Estate establishes good cause.  *Curtis*, 202 F.

_____

[3] The court also agrees with the analysis in *Rose v. Prince George's Cnty.*, DKC 11-1984, 2012 WL 1204087, at *6-8 (D. Md. April 10, 2012) in holding that the LGTCA applies to state constitutional torts.
[4] To the extent that the Estate was required to provide notice to the State of Maryland under the Maryland Tort Claims Act ("MTCA"), such notice was also lacking.  Any waiver by the State of its sovereign immunity is conditioned upon the injured party submitting written notice of its tort claim with the State Treasurer's Office within one year after the injury.  Md. Code., State Gov't Art. § 12-106(b)(1).  Here, the Estate never provided any notice of claim to the treasurer.

Supp. 2d at 414 (citations omitted).  Here, the Estate has not moved for waiver of the notice requirement nor has it alleged any facts demonstrating good cause for its failure to meet the notice requirement.  Accordingly, Counts VI, VII, and VIII will be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, defendants' motion to dismiss the Estate's first amended complaint will be granted in part and denied in part.  A separate Order follows.

<u>March 29, 2013</u>                                   _____/s/_____
Date                                                            Catherine C. Blake
                                                                   United States District Judge